UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMEL DONABY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:17CV504 RLW |
| ) | |
| NANCY BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 1383(c)(3) for judicial review of Defendant's final decision finding that Plaintiff's disability ended and she is no longer entitled to Supplemental Security Income ("SSI") payments under Title XVI of the Social Security Act. For the reasons set forth below, the Court affirms the decision of the Commissioner.

### I. Procedural History

Plaintiff was previously found disabled beginning October 21, 2001 and was issued a Notice of Award dated December 26, 2003. (Tr. 167, 170-75) On May 6, 2008, after review of the evidence in Plaintiff's disability claim, the Social Security Administration found that Plaintiff's disability was continuing. (Tr. 192-96) Upon subsequent review of the medical evidence, Defendant determined that Plaintiff's disability ceased as of March 24, 2014, and Plaintiff's disability payments ended on May 31, 2014. (Tr. 167-69, 197-99) Plaintiff's impairments included arthritis, heel spur, back/neck pain, and anxiety/depression. (Tr. 197) Plaintiff filed a request for reconsideration on April 9, 2014. (Tr. 200) On September 12, 2014, a Disability Hearing Officer questioned Plaintiff, analyzed the evidence, and concluded that Plaintiff was not disabled. (Tr. 215-24) Plaintiff filed a request for a hearing by an

Administrative Law Judge ("ALJ'), and on February 20, 2015, Plaintiff appeared pro se for an administrative hearing. (Tr. 129-158, 228) In a decision dated November 6, 2015, the ALJ determined that Plaintiff's disability ended on March 24, 2014, and the Plaintiff had not become disabled again since that date. (Tr. 108-20) On December 13, 2016, the Appeals Council denied Plaintiff's request for review. (Tr. 1-3) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## I. Evidence Before the ALJ

At the hearing on February 20, 2015, Plaintiff appeared without attorney representation. Plaintiff acknowledged that she chose to proceed without counsel. Plaintiff stated that some of her recent medical records were missing from the evidence. The ALJ stated that she would take testimony from Plaintiff and a vocational expert ("VE") and then would wait for additional records and schedule another hearing. (Tr. 129-36)

The ALJ questioned Plaintiff during the hearing. Plaintiff testified that she was 34 years old and completed the ninth grade. While on disability, Plaintiff did some work caring for two children, ages four and six. She fed them, read to them, and took them outside to play. Plaintiff also cared for her disabled mother doing light cleaning. She worked for Genesis In-Home Health Care but had to quit due to issues with her leg. Plaintiff helped care for a disabled person by washing dishes, cleaning the bathroom, and making his bed. (Tr. 139-43)

Plaintiff testified that she was in a vehicle accident, which resulted in problems with her back and neck. Plaintiff had surgery on her lower back, left wrist, and jaw. Doctors also removed part of her liver and her gallbladder. Plaintiff stated that she continued to experience issues associated with the accident. She took Vicodin and Tramadol, which relieved the pain for a certain time. During the day, Plaintiff read and watched TV. She tried to move around, but

2

she was off-balance and afraid she would fall. Plaintiff had a home health person that stopped by to cook, do laundry, and perform chores. Plaintiff stated that she had Medicare and Medicaid, and she had three children, ages 14, 8, and 7. She was able to, but did not, drive because her right leg cramped and her foot would go numb. (Tr. 143-46)

When asked by the ALJ whether Plaintiff applied for unemployment benefits, the Plaintiff answered that she did not recall applying for such benefits. The ALJ also noted an assault charge and shoplifting charges against Plaintiff. Plaintiff stated that she was with other people and was not the culprit. In addition, she was never convicted. The ALJ questioned Plaintiff about not being truthful to Social Security examiners. (Tr. 146-49)

Plaintiff also testified that she had been taking medication for depression over the past three years, which she found helpful. Plaintiff's home health aide did the shopping, and sometimes the father of her children took Plaintiff to the grocery store. Plaintiff stated that her hip was the main reason she was unable to work. Plaintiff's doctor informed her that she needed a hip replacement, and Plaintiff stated that neither pain medication nor physical therapy helped. In addition, Plaintiff fractured her ankle the year before. Although the fracture healed she continued to have problems with her ankle and wore a brace all the time except when in bed. Plaintiff also testified that she experienced headaches and blurry vision but had not received a diagnosis. She had asthma and used a rescue inhaler every day. She was unable to be around smoke, animals, dust, fumes, and humidity. Plaintiff took Trazodone for sleep. Plaintiff had high blood pressure for which she took medication. (Tr. 149-54)

The ALJ also questioned a VE about Plaintiff's ability to perform jobs that existed in the national economy. With regard to Plaintiff's past job as a daycare worker, the VE testified that the job was titled child monitor and was medium exertion which was semi-skilled. The ALJ

3

then stopped the questioning and indicated that she would ask additional questions via interrogatory or a supplemental hearing. The ALJ also stated that she wanted updated medical records from Plaintiff's physicians regarding her current physical condition. (Tr. 154-58)

Plaintiff completed a Continuing Disability Review Report on April 9, 2013. She listed her medical conditions as arthritis, heel spur, back and neck pain, and anxiety and depression. She also reported high blood pressure. Her daily activities included waking up around 8:00 a.m. and getting her kids off to school, as well as taking a shower. She reported difficulty dressing due to pain in arms and legs; bathing because she could not get out of the tub; caring for her hair due to arm cramps; preparing meals due to pain in legs, heel, and hands; doing chores due to heel spurs and leg pain; shopping because she could not walk around the store due to pain; walking; standing; and getting along with people. (Tr. 315-326)

In a Function Report – Adult dated June 24, 2013, Plaintiff reported being in pain throughout the day. She did her best to get her kids dressed, shower and dress herself, and make a quick lunch. Her daughter helped her with the boys because Plaintiff could not do much. She prepared food once a day for her children, but she needed one to two hours to fix a meal because she was unable to be on her feet for very long. Plaintiff was able to wipe off tables and counters and gather clothes for her kids to wear the following day. However, she needed help with all other household chores. Plaintiff reported that she sometimes lacked strength to move. She could shop two to three times a month for food and household needs. Her interests included reading, watching TV, and seeing her kids grow up. She spent time with family members and her friend. Plaintiff became mad at times because she was unable to do things she used to do. Her conditions affected her ability to lift, squat, bend, stand, reach, walk, kneel, climb stairs, complete tasks, use hands, and get along with others. Plaintiff reported that she could walk 30 to

4

40 feet before needing to rest for 10 minutes. She was able to pay attention and follow instructions very well. Plaintiff stated that she was in pain all the time. (Tr. 329-37)

Plaintiff completed a Disability Report – Appeal on April 21, 2014. She reported arthritis in her right hip and right knee that has worsened. Further, she was unable to be on her feet as long as before, and she recently began experiencing headaches. She had also seen a doctor for abdominal pain, diarrhea, and vomiting. Plaintiff reported that her pain was unbearable. (Tr. 345-52)

In an additional Function Report – Adult dated May 5, 2014, Plaintiff stated that she had shortness of breath, weakness, pain, lack of energy, and fingers that cramped. She was afraid to do things because her legs gave out on her, and her back pain was severe. She had a caregiver to help her with grooming and with taking her medication. The caregiver also helped with the children and the chores. She only prepared meals once a week because she was unable to grip items and stand for long periods of time. She required help with all house and yard work, as well as shopping. Plaintiff reported that she tried to do exercises given by the physical therapist. She believed she could lift only 7 pounds with her right arm and could not walk a block before needing to rest for 5 to 10 minutes. Plaintiff recently fell and fractured her ankle. (Tr. 357-67)

A Vocational Interrogatory completed by the VE asked the VE to assume an individual of Plaintiff's age and limited education with past work experience as a child monitor. In addition, the person had the residual functional capacity ("RFC") to perform light work except she could occasionally climb ramps and stairs, stoop, kneel, and crouch; should never climb ladders, ropes, or scaffolds; should never crawl; could frequently reach overhead with bilateral upper extremities; could frequently use her left non-dominant hand for handling; should avoid all exposure to vibration; could have occasional exposure to atmospheric conditions; should have no

5

exposure to hazards such as unprotected heights and dangerous machinery; and is capable of performing simple, routine tasks. The VE answered that the individual would be unable to perform Plaintiff's past work. However, the person could perform other work, including assembler, plastic hospital products; inspector and hand packager (plastic products); and marker – marking clerk or merchandise marker. If the individual missed work in excess of 2 days per month on a regular basis, there would be no unskilled work available. The VE stated that no conflicts existed between the occupational evidence and the information contained in the DOT and/or SCO. (Tr. 428-37)

### III. Medical Evidence

Plaintiff was examined by her primary care physician Doris J. Tribune Brown, D.O., on May 15, 2013. Dr. Brown assessed asthma, stable; hypertension, controlled; acute pain in joint; local skin infection, acute; and chronic pain due to trauma. (Tr. 609-16) X-rays of Plaintiff's left foot and lumbar spine were normal. However, an x-ray of her left wrist revealed osteoarthritis, probably post-traumatic with old fracture change and radiocarpal, joint narrowing. (Tr. 617-19) Plaintiff was treated for depression by Arif Habib, M.D. On May 28, 2013 Dr. Habib noted that her depression was stable. (Tr. 531-36)

On August 20, 2013, Dennis A. Velez, M.D., performed a consultative examination. Physical examination was normal, with full strength in upper and lower extremities. Plaintiff had pain and tenderness in her left foot and lumbosacral spine. She had difficulty squatting, walking, and bending. Plaintiff wore an AFO boot on her left foot, but Dr. Velez was unclear as to the reason. Dr. Velez assessed normal strength and normal sensation in the upper and lower extremities other than left foot tenderness. She had no limitation on range of motion and reflexes in all extremities were intact. The cardiopulmonary exam was normal with no wheezing, rales,

6

or cough. Plaintiff was not using inhalers and denied a history of acute respiratory problems or visits to the ER. Plaintiff showed no evidence of joint swelling, crepitus, erythema or joint effusion in any of the tested joints. Dr. Velez found no objective evidence of venous thromboembolism. Dr. Velez concluded that he was unable to find any limitations to Plaintiff's ability to sit, stand, or walk. In addition, he found no lifting or carrying limitations, verbal or written communication problems, or manipulative limitations. Dr. Velez diagnosed a history of motor vehicle collision status post multiple fractures that was now resolved. (Tr. 624-28)

Plaintiff saw Jacques Van Ryn, M.D., on August 6, 2013 for a consultative examination at the request of Dr. Brown. Dr. Van Ryn assessed patellar instability and recommended physical therapy. In addition Dr. Van Ryn diagnosed severe deltoid insertional enthosopathy and right wrist pain. He recommended physical therapy for knees and shoulders. In addition he advised Plaintiff to lose weight in order to solve her current problems. (Tr. 927-31)

Plaintiff returned to Dr. Van Ryn on September 27, 2013 for complaints of right knee and right shoulder pain. Plaintiff reported doing well with physical therapy and losing weight. On examination, Plaintiff showed a full range of motion of bilateral shoulder with some moderate tenderness. Her wrist was not painful with normal range of motion and good strength. The patellae showed hypermobility and moderate tenderness. Strength was improved with no joint effusion and full range of motion. (Tr. 924-26)

On October 24, 2013, non-examining medical consultant Libbie Russo, M.D., noted that she found no sign/symptom/lab values or MDI that demonstrated medical improvement. (Tr. 707)

Dr. Brown examined Plaintiff on March 4, 2014 for complaints of musculoskeletal pain and cough. Physical exam revealed back pain, crepitus, decreased mobility, joint pain, and neck

7

pain. Dr. Brown assessed cervical fusion syndrome and chronic back pain. She recommended physical therapy. She also assessed morbid obesity. (Tr. 759-64)

Donna McCall, D.O., a non-examining medical consultant, completed a Physical Residual Functional Capacity Assessment on March 19, 2014. She listed Plaintiff's diagnoses as osteoarthritis of the wrist, morbid obesity, hypertension, and asthma. Dr. McCall opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand and/or walk and sit for 6 hours in an 8-hour workday; perform unlimited pushing and/or pulling. She was limited to occasional climbing of ladders/ropes/scaffolds and limited in her ability to handle. Plaintiff should avoid concentrated exposure to extreme cold and vibration. Dr. McCall opined that Plaintiff's statements regarding her physical limitations were unsupported by objective findings. She was able to perform many daily activities including caring for her children, driving, cooking, and doing household chores. In addition, Plaintiff had multiple arrests and there were many discrepancies in her stories to investigators. Dr. McCall gave Dr. Velez's opinion significant weight as to his finding that Plaintiff did not have physical or communication limitations. (Tr. 708-13)

On July 29, 2014, Plaintiff saw Dr. Van Ryn for a follow up visit. Plaintiff complained of increasing right hip pain and continued right ankle pain. Dr. Van Ryn assessed post-traumatic arthritis in the right hip, not under good control with Plaintiff's current program. She also had significant residual from her ankle sprain. Plaintiff had not lost any weight. Dr. Van Ryn planned to order a right hip injection. (Tr. 1043-45)

Plaintiff presented to the ER on January 15, 2015 for complaints of shortness of breath. Review of systems was normal, with no complaints of muscle weakness, joint pain, or back pain. A chest x-ray showed mild cardiomegaly, stable. Plaintiff was released the same day in

8

improved condition with a diagnosis of asthma exacerbation. (Tr. 1077-91) Plaintiff returned to the ER on February 13, 2018 for complaints of chronic pain due to trauma. X-rays of both hips showed no evidence of bone or joint abnormality. X-rays of the lumbar spine revealed lumbar spine straightening but no evidence of significant lumbar spondylosis. (Tr. 1092-98) X-rays of Plaintiff's right knee and right ankle performed on May 28, 2015 were negative. (Tr. 1101-02)

Plaintiff returned to Dr. Brown several times between July 2014 and November 2015 for medication refills and follow-up care. (Tr. 1107-86) Treatment records from Washington University Orthopedics indicated tenderness over Plaintiff's lateral trochanteric region of the right hip. She was diagnosed with mild to moderate posttraumatic right hip osteoarthritis and given injections. (Tr. 1205-1255)

## IV. The ALJ's Determination

In a decision dated November 6, 2015, the ALJ first noted that the most recent favorable medical decision finding that Plaintiff continued to be disabled was a May 5, 2008 determination, known as the "comparison point decision" or CPD. The ALJ found that at the time of the CPD, Plaintiff's medically determinable impairments included the residual effects of a cervical spine fusion at C2 through C4; the residual effects of a fractured right hip that was repaired with a metal plate; the residual effects of a left wrist fracture; and borderline intellectual functioning. These impairments resulted in the residual functional capacity ("RFC") to perform sedentary work, with additional limitations of lifting less than 10 pounds and performing simple repetitive tasks. Plaintiff was found to be unable to work for a full 8-hour day and unable to work without frequent absences. (Tr. 108-10)

The ALJ further found that as of March 24, 2014, Plaintiff's medically determinable impairments included obesity; degenerative joint disease of the right hip and right knee; asthma;

9

borderline intellectual functioning; essential hypertension; anxiety; an affective disorder; chronic nonocclusive thrombus in her leg; mild heart dysfunction; and lumbar facet arthropathy. However, since March 24, 2014, Plaintiff did not have an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ determined that medical improvement occurred as of March 24, 2014 such that the impairments present at the time of the CDP decreased in medical severity to the point where Plaintiff had the RFC to perform light work. The ALJ found further limitations of only occasionally climbing ramps and stairs, stooping, kneeling, and crouching. She could never climb ladders, ropes, or scaffolds and could never crawl. Plaintiff was capable of performing simple, routine tasks. In addition, the ALJ found that Plaintiff's medical improvement was related to the ability to work because it resulted in an increase in Plaintiff's RFC. Although beginning in March 24, 2014 Plaintiff continued to have a severe impairment or combination of impairments, the ALJ determined that Plaintiff had the RFC to perform light work with limitations previously stated. The ALJ listed additional limitations of frequent reaching overhead with bilateral upper extremities and frequent use of her left non-dominant hand for handing. Further, Plaintiff should avoid all exposure to vibration and have only occasional exposure to atmospheric conditions. Plaintiff should have no exposure to hazards such as unprotected heights and dangerous machinery. (Tr. 110-18)

Based on Plaintiff's lack of past relevant work, younger age, limited education, and RFC based on her current impairments, the ALJ determined that Plaintiff had been able to perform a significant number of jobs in the national economy. Such jobs included assembler, inspector and hand packager, and marker. Thus, the ALJ concluded that Plaintiff's disability ended March 24, 2014, and Plaintiff had not become disabled again since that date. (Tr. 118-20)

## V. Legal Standards

The Social Security Act defines a disabled person as an individual that "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To be found disabled, an individual must show that his physical or mental impairment(s) "are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Where an individual has been granted disability benefits, her continued entitlement to such benefits must be reviewed periodically. 20 C.F.R. § 416.994(a). "The Commissioner may terminate benefits to a person previously adjudged to be disabled upon substantial evidence that the individual's condition has improved." *Bennett v. Colvin*, 174 F. Supp. 3d 1031, 1037 (E.D. Mo. 2016). "When benefits have been denied based on a determination that a claimant's disability has ceased, the issue is whether the claimant's medical impairments have improved to the point where [s]he is able to perform substantial gainful activity." *Delph v. Astrue*, 538 F.3d 940, 945 (8th Cir. 2008) (citing 42 U.S.C. § 423(f)(1)). "This 'medical improvement' standard requires the Commissioner to compare a claimant's current condition with the condition existing at the time the claimant was found disabled and awarded benefits." *Id.*

The continuing disability review process involves a sequential analysis of up to eight steps for the Commissioner to determine. These steps include: (1) whether the claimant has an

11

impairment or combination thereof that meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (2) whether there has been medical improvement as defined as any decrease in the medical severity of the impairment(s) based on improvement in the symptoms, signs and/or laboratory findings; (3) whether the medical improvement is related to the ability to work, which results in an increase in the claimant's ability to perform basic work activities; (4) whether an exception to medical improvement applies; (5) whether all the claimant's current impairments in combination are severe; (6) if the impairment(s) is severe, whether the claimant has the residual functional capacity based on all current impairments to perform past relevant work; (7) if unable to do past work, whether the claimant can do other work given the residual functional capacity assessment, age, education, and past work experience; and (8) if the evidence about a claimant's past relevant work is not sufficient to make a finding under (6), whether the claimant can adjust to other work based solely on age, education, and residual functional capacity. 20 C.F.R. § 416.994(b)(5)(i)-(viii).

The Court will affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010). "Substantial evidence means less than a preponderance, but sufficient evidence that a reasonable person would find adequate to support the decision." *Id.* "We will not disturb the denial of benefits so long as the ALJ's decision falls within the available zone of choice. An ALJ's decision is not outside the zone of choice simply because we might have reached a different conclusion had we been the initial finder of fact." *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (citations and internal quotations omitted). Instead, even if it is possible to draw two different conclusions from the evidence, the Court must affirm the Commissioner's decision if it is supported by substantial evidence. *See Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

## VI. Discussion

Plaintiff contends that the Court should reverse the Commissioner's decision because substantial evidence does not support the finding of medical improvement sufficient to terminate Plaintiff's disability benefits. First, Plaintiff argues that the ALJ failed to fully and fairly develop the record, as Plaintiff was unrepresented, such that no objective evidence supports the ALJ's finding that medical improvement occurred. Plaintiff further asserts that the ALJ relied on a consultative examiner to find that medical improvement occurred but failed to adopt the conclusions regarding Plaintiff's ability to work. Additionally, Plaintiff claims that the CPD found that Plaintiff could only work less than 8 hours in a workday, and the ALJ's decision failed to demonstrate that Plaintiff was capable of engaging in sustained work activity. Finally, Plaintiff argues that the RFC is erroneous because the ALJ failed to properly consider Plaintiff's credibility and the hypothetical question did not capture the concrete consequences of Plaintiff's impairments. The Defendant responds that substantial evidence supports the ALJ's RFC finding, including the ALJ's evaluation of Plaintiff's subjective complaints. Defendant additionally maintains that substantial evidence supports the ALJ's finding that Plaintiff's medical condition improved, and she was not disabled as of March 24, 2014.

### A. Plaintiff's RFC

With regard to Plaintiff's residual functional capacity, "a disability claimant has the burden to establish her RFC." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004) (citation omitted). The ALJ determines a claimant's RFC "'based on all the relevant evidence, including medical records, observations of treating physicians and others, and [claimant's] own description of her limitations.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). RFC is defined as the most that a

13

claimant can still do in a work setting despite that claimant's limitations. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). "An ALJ may discredit a claimant's subjective allegations of disabling symptoms to the extent they are inconsistent with the overall record as a whole." *Baker v. Colvin*, No. 4:15-CV-1335 JAR, 2016 WL 5470218, at *5 (E.D. Mo. Sept. 29, 2016) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); 20 C.F.R. § 404.1529; SSR 96–7p).[1] "In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." SSR 96-7p (S.S.A. July 2, 1996).

The Court finds that the ALJ properly assessed Plaintiff's RFC in light of all the evidence in the record, including Plaintiff's subjective allegations of disabling pain. In evaluating Plaintiff's credibility, the ALJ is required to apply the *Polaski*[2] factors and determine whether the

---

[1] Plaintiff suggests that the Court apply SSR 16-3p, which rescinded and superseded SSR 96-7p regarding the assessment of credibility of an individual's statements in disability claims. However, in a notice dated October 25, 2017, the Social Security Administration clarified that when a federal court reviews a final decision in a disability claim, the agency expects "the court to review the final decision using the rules that were in effect at the time [the agency] issued the decision under review." *Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3P (S.S.A. Oct. 25, 2017). Thus, the Court will apply SSR 96-7p in reviewing the ALJ's determination.

[2] The Eight Circuit Court of Appeals "has long required an ALJ to consider the following factors when evaluating a claimant's credibility: '(1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints.'" *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011) (quoting *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009)) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).

evidence so contradicts plaintiff's subjective complaints that the ALJ could discount the testimony as not credible. *Blakeman v. Astrue*, 509 F.3d 878, 879 (8th Cir. 2007) (citation omitted).

Here, the ALJ noted that Plaintiff's claims of disability were not consistent with the objective medical evidence, the observations of examining physicians, or Plaintiff's daily activities. (Tr. 116) The record shows that Plaintiff reported caring for her children, babysitting part-time for other children, caring for her mother, providing in-home services, cooking meals, performing household chores, shopping, reading, and watching TV. (Tr. 112, 331-34, 358-61) The Court finds that these activities are inconsistent with Plaintiff's allegations of disability. *See Ponder v. Colvin*, 770 F.3d 1190, 1195 (8th Cir. 2014) (finding plaintiff's activity level undermined her allegations of total disability where plaintiff admitted that she "performs light housework, washes dishes, cooks for her family, does laundry, can handle money and pays bills, shops for groceries and clothing, watches television, drives a vehicle, leaves her house alone, regularly attends church, and visits her family"); *McDade v. Astrue*, 720 F.3d 994, 998 (8th Cir. 2013) (finding ALJ properly discounted plaintiff's assertion of disabling pain where plaintiff's daily activities included "the ability to perform some cooking, take care of his dogs, use a computer, drive with a neck brace, and shop for groceries with the use of an electric cart"); *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004) (finding that the ALJ was not unreasonable in noting that the plaintiff's part-time work, cleaning house, and attending church were inconsistent with her claim of disabling pain). "Of course, there are cases in which a claimant's ability to engage in certain personal activities 'does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity.'" *Ponder*, 770 F.3d at 1195 (quoting *Singh v. Apfel,* 222 F.3d 448, 453 (8th Cir. 2000)). However, in light of

the extensive nature of Plaintiff's daily activities, the Court finds that the ALJ properly discounted Plaintiff's subjective complaints based on the inconsistencies between her subjective complaints and her activities of daily living. *Id.*

Further, the ALJ properly noted the inconsistencies between Plaintiff's subjective allegations and the objective medical evidence. Although Plaintiff complained of disabling pain, the objective medical evidence did not support the level of pain and disability. The ALJ noted that x-rays of Plaintiff's hip, wrist, neck, back, and knee showed only mild arthritis. (Tr. 117) On examination, Dr. Valez found no muscle atrophy, normal strength, and good range of motion. Although Plaintiff wore an AFO boot, Dr. Valez did not find a reason for the use of the ankle/foot boot. Dr. Valez concluded that Plaintiff had no limitations with regard to sitting, standing, walking, lifting, manipulation, or communication. (Tr. 624-28)

Likewise, on review of Plaintiff's medical records, the consultative examiner agreed with Dr. Valez' opinion that Plaintiff did not have physical or communication limitations. (Tr. 713) Plaintiff's primary care physician assessed pain based on Plaintiff's subjective complaints, but physical exams were either normal or demonstrated only some moderate pain with motion. (Tr. 1107-86) Although Plaintiff may experience some pain and limitations, this does not establish disability. "'While pain may be disabling if it precludes a claimant from engaging in any form of substantial gainful activity, the mere fact that working may cause pain or discomfort does not mandate a finding of disability.'" *Perkins v. Astrue*, 648 F.3d 892, 900 (8th Cir. 2011) (quoting *Jones v. Chater,* 86 F.3d 823, 826 (8th Cir.1996)).

While Plaintiff argues that the ALJ failed to support the finding that Plaintiff retained the ability to sustain work in an 8-hour day, the record shows that Plaintiff medically improved such that she was able to work. Dr. Velez found that Plaintiff had no limitations with regard to sitting,

16

standing, walking, or lifting. (Tr. 628) Dr. McCall agreed and found that Plaintiff was able to be active above the sedentary level, thus demonstrating medical improvement. (Tr. 713) The Court finds that the ALJ did not err in considering these opinions along with the medical evidence as a whole in determining that Plaintiff was able to perform work. *Casey v. Astrue*, 503 F.3d 687, 694 (8th Cir. 2007).

Further, Plaintiff asserts that the ALJ should not have rejected the opinion of Dr. Russo, the non-examining medical consultant, who stated that the evidence did not support medical improvement. (Tr. 707) "The ALJ is not required to accept every opinion given by a consultative examiner, however, but must weigh all the evidence in the record." *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016). Further, "[t]he interpretation of physicians' findings is a factual matter left to the ALJ's authority. *Id.* In addition to the findings of Dr. Velez and Dr. McCall, none of Plaintiff's treating physicians during the redetermination period found Plaintiff to be limited such that she could not work. The ALJ need not rely entirely on a particular doctor's opinion or choose between opinions. *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011). The ALJ properly chose to credit the opinions of other treating, examining, and non-examining physicians, "none of which indicated that [Plaintiff] had serious functional restrictions." *Id.*

Plaintiff also argues that the ALJ failed to fully develop the record to further explain the inconsistent objective findings. "[T]he fact that [Plaintiff] appeared pro se does not relieve [her] of the burden to establish disability." *Whitman v. Colvin*, 762 F.3d 701, 701 (8th Cir. 2014). Further, upon review of the transcript and medical evidence therein, the Court is satisfied that the ALJ sufficiently developed the record.

In short, the Court finds that substantial evidence based on the record as a whole supports the ALJ's determination that Plaintiff's medical condition had improved and that she retained the RFC to perform light work. Here, the ALJ properly performed an exhaustive analysis of the medical evidence and made factual findings based on this evidence. *Martise*, 641 F.3d at 926. Further, as stated above, the ALJ properly assessed and discredited Plaintiff's allegations of disabling pain and limitations. Therefore, the undersigned finds that substantial evidence supports the ALJ's RFC determination.

## B. Hypothetical to the VE

Finally, Plaintiff contends that the hypothetical question given to the VE failed to capture the concrete consequences of Plaintiff's impairments. "A hypothetical question is properly formulated if it sets forth impairments 'supported by substantial evidence in the record and accepted as true by the ALJ.'" *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). Further, where substantial evidence supports an ALJ's finding that a plaintiff's complaints were not credible, the ALJ may properly exclude those complaints from the hypothetical question. *Id.*

In the instant case, the ALJ included only those impairments and limitations that she found credible. The ALJ asked the VE to assume an individual limited to light work with additional restrictions. These limitations are consistent with medical and other evidence in the record and with the ALJ's RFC determination. Therefore, the undersigned finds "[t]he hypothetical was sufficient because it represented a valid assessment of [Plaintiff's] physical limitations consistent with the evidence in the record." *Davis v. Apfel*, 239 F.3d at 966. Because the hypothetical question properly set forth Plaintiff's limitations, the VE's testimony constituted substantial evidence upon which the ALJ could properly rely in determining that

Plaintiff was no longer disabled. *Id.* Therefore, the undersigned finds that substantial evidence supports the ALJ's determination that Plaintiff's disability ceased as of March 24, 2014, and the Court affirms the decision of the Commissioner.

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying social security benefits is **AFFIRMED**. An appropriate Judgment shall accompany this Memorandum and Order.

Dated this 29th day of March, 2018.

*Ronnie L. White*

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**